OPINION
{¶ 1} Appellant, Douglas M. Sanders, appeals the May 29, 2003 judgment entry, in which the Portage County Court of Common Pleas, convicted and sentenced him for possession of cocaine, trafficking in cocaine, and having weapons under disability.
 {¶ 2} On February 6, 2003, appellant was indicted on one count of possession of cocaine, a first degree felony, in violation of R.C. 2925.11; twenty-two counts of trafficking in cocaine with two specifications to each count, felonies of the second, fourth and fifth degrees, in violation of R.C. 2925.03; and two counts of having weapons under disability, both fifth degree felonies, in violation of R.C. 2923.13. On February 14, 2003, at his arraignment, appellant entered a plea of not guilty to the charges, and bond was set at $1 million.
 {¶ 3} On March 4, 2003, appellant filed a motion to suppress any and all evidence seized during the search of his residence, which was located at 3840 Richardson Street, Ravenna, Ohio. On March 13, 2003, the state filed a motion to dismiss count nine of the indictment, trafficking in cocaine. A suppression hearing was held, and in a March 31, 2003 entry, the trial court overruled the motion to suppress.
 {¶ 4} On April 3, 2003, the grand jury returned a supplemental indictment, charging appellant with three counts of aggravated possession of drugs, in violation of R.C. 2925.11, all felonies of the fifth degree. On April 4, 2003, appellant entered a plea of not guilty to those charges. The record reflects that the trial court granted appellant's motion to bifurcate those three charges. On April 7, 2003, the grand jury returned an amended indictment to count twenty-three, amending it from a third degree felony to a first degree felony for trafficking in cocaine.
 {¶ 5} A jury trial took place from April 8, 2003, through April 15, 2003. Prior to the trial, the trial court accepted the state's amendment to count twenty-three and accepted the state's nolle prosequi to counts nine and eleven, and count twenty-three in the original indictment, for trafficking in cocaine. During the course of the trial, on April 14, 2003, appellant entered a plea of no contest to two counts of having weapons under disability. In an entry dated April 14, 2003, the trial court found appellant guilty of both counts of having weapons under disability.
 {¶ 6} The following facts were revealed at trial. In January 2002, a confidential informant who was working with the Portage County Sheriff's Department purchased drugs from appellant in exchange for money on nineteen different occasions. The transactions took place at appellant's residence. Officers assigned to a special drug enforcement unit monitored the drug dealings between the confidential informant and appellant.
 {¶ 7} During the initial buys, the confidential informant was equipped with audio surveillance, and on five occasions, he was outfitted with a hidden video camera to record the transactions. The confidential informant was searched prior to the buys, and although he was searched after the purchases, his mouth and shoes were not checked. Also, even though his car was inspected, the trunk and hood were not examined. After each purchase, the confidential informant was searched, and the evidence was logged and taken to the police department.
 {¶ 8} The Portage County Sheriff's Department secured a search warrant for appellant's residence on January 31, 2003, at 10:34 p.m. There was a no-knock provision in the warrant. A team of thirteen officers arrived at appellant's residence, entered and secured the home, and detained appellant. Appellant was presented with the search warrant, and the house was searched. There was testimony at both the suppression hearing and at the trial that as the search took place, appellant was sitting in a chair handcuffed. Officers recovered two shotguns, a large amount of cocaine, a plate holding several pieces of crack cocaine, a round chunk of crack cocaine, razor blades, a considerable amount of money, and other drug related items.
 {¶ 9} The jury returned with a verdict of guilty to: one count of possession of cocaine, a felony of the first degree; seventeen counts of trafficking in cocaine, all felonies of the fifth degree; one count of trafficking in drugs, a felony of the fourth degree, and one count of trafficking in cocaine, a felony of the first degree, which was count twenty-three as amended. The matter was referred to the probation department for a presentence investigation and report.
 {¶ 10} A sentencing hearing took place on May 27, 2003. In an entry dated May 29, 2003, the trial court sentenced appellant to a term of nine years on both of the first degree felonies to run concurrent to each other; a term of seven months for each of the fourth and fifth degree felonies to run consecutive to each other and to the nine year sentence; a term of six months for both counts of having a weapon under disability to be served concurrently to each other and concurrently to the other sentences. Thus, appellant received an aggregate sentence of nineteen and one-half years. Appellant received a credit for one hundred sixteen days served, his driver's license was suspended for six months; and he was assessed a mandatory fine of $10,000 for each felony of the first degree. Appellant timely filed the instant appeal and now raises the following assignments of error for our review:
 {¶ 11} "[1.] The trial court erred to the prejudice of [appellant] when it failed to suppress the evidence gathered from the residence pursuant to an invalid search warrant.
 {¶ 12} "[2.] The trial court erred to the prejudice of [appellant] when it allowed several exhibits to be entered into evidence over the objections of defense counsel.
 {¶ 13} "[3.] The trial court erred to the prejudice of [appellant] when it overruled his motion for acquittal made pursuant to Crim.R. 29 of the Ohio Rules of Criminal Procedure.
 {¶ 14} "[4.] The trial court erred to the prejudice of [appellant] when it sentenced [appellant] to a definite sentence of seventeen (17) consecutive seven (7) month sentences, to be served consecutively with a nine (9) year definite sentence for two (2) first degree felonies, which were allied offenses of similar import, and failed to review all of the statutory factors announced in R.C. 2929.12.
 {¶ 15} "[5.] [Appellant's] constitutional rights to due process were prejudiced by the ineffective assistance of trial counsel.
 {¶ 16} "[6.] The trial court erred to the prejudice of [appellant] when it failed to grant him a continuance to allow his counsel ample time to prepare a defense to numerous counts in the indictment."
 {¶ 17} For the first assignment of error, appellant claims that the court erred by failing to suppress the evidence gathered from the residence pursuant to an invalid search warrant that was not supported by probable cause and was based upon information from an unreliable informant.
 {¶ 18} The review of a judge's or magistrate's decision to issue a search warrant is not de novo. Courts examining the issuance of a warrant are directed to, "* * * ensure that the magistrate [or judge] had a substantial basis for concluding that probable cause existed." State v. George (1989),45 Ohio St.3d 325, paragraph two of the syllabus. Reviewing courts are further instructed to afford great deference to the judge's or magistrate's decision. Doubtful or marginal cases should be resolved in favor of upholding the warrant. Id., followingIllinois v. Gates (1983), 462 U.S. 213.
 {¶ 19} Probable cause exists when, after considering such factors as the veracity of the source of the information and the basis of his or her knowledge, the judge or magistrate concludes that the totality of the circumstances suggest a fair probability that contraband or evidence of a crime will be found in a particular place. State v. Swearingen (1999),131 Ohio App.3d 124, 128.
 {¶ 20} In making the probable cause analysis some weight is to be afforded information provided by a previously reliable source or an "honest citizen" who reports criminal activity.Gates at 233. Even if the judge or magistrate harbors some doubt as to an informant's motives, the informant's explicit and detailed description of alleged wrongdoing, coupled with a statement that such wrongdoing was observed firsthand, is entitled, "* * * greater weight than might otherwise be the case." Id. at 234.
 {¶ 21} Moreover, the United States Supreme Court recently held that an interval of fifteen to twenty seconds from the police officers' knock and announcement of a search warrant until they forcibly entered after getting no response was reasonable given the exigency of the possible destruction of evidence.United States v. Banks (2003), 540 U.S. 31, paragraph one of the syllabus. See, also, State v. Blue, 2d Dist. No. 20136, 2004-Ohio-2953, at ¶ 13. R.C. 2933.231(B) states that:
 {¶ 22} "A law enforcement officer * * * who files an affidavit for the issuance of a search warrant * * * may include in the affidavit a request that the statutory precondition for nonconsensual entry be waived in relation to the search warrant. A request for that waiver shall contain all of the following:
 {¶ 23} "(1) A statement that the affiant has good cause to believe that there is a risk of serious physical harm to the law enforcement officers or other authorized individuals who will execute the warrant if they are required to comply with the statutory precondition for nonconsensual entry;
 {¶ 24} "(2) A statement setting forth the facts upon which the affiant's belief is based, including, but not limited to, the names of all known persons who the affiant believes pose the risk of serious physical harm to the law enforcement officers or other authorized individuals who will execute the warrant at the particular dwelling house or other building;
 {¶ 25} "(3) A statement verifying the address of the dwelling house or other building proposed to be searched as the correct address in relation to the criminal offense or other violation of law underlying the request for the issuance of the search warrant;
 {¶ 26} "(4) A request that, based on those facts, the judge or magistrate waive the statutory precondition for nonconsensual entry."
 {¶ 27} In the case at bar, the state asserts that the evidence sought to be seized, crack cocaine, could be destroyed quickly, and that the safety of the officers could have been jeopardized because appellant was known to possess weapons. Therefore, because the state demonstrated the existence of exigent circumstances, the search at issue was reasonable under the Fourth and Fourteenth Amendments, and the search warrant was properly issued. Appellant's first assignment of error lacks merit.
 {¶ 28} In the second assignment of error, appellant maintains that the trial court erred when it allowed several exhibits to be entered into evidence over the objections of defense counsel.
 {¶ 29} "[A] trial court has broad discretion in the admission or exclusion of evidence and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, this court should be slow to interfere." State v.Hymore (1967), 9 Ohio St.2d 122, 128. A finding that a trial court abused its discretion implies that the court acted unreasonably, arbitrarily or unconscionably. State v. Adams
(1980), 62 Ohio St.2d 151, 157.
 {¶ 30} In the case at hand, the trial court allowed the state to introduce several bags of crack cocaine as evidence in the form of exhibits 5-22. The state's exhibits 5-15 and 17-22 were admitted over defense counsel's objections. At trial, the confidential informant identified exhibits 5-22, as various quantities of cocaine that he had purchased from appellant. Further, Deputy Palozzi recognized exhibits 5-12; 14-17; and 21-22 as evidence bags containing the suspected crack cocaine he obtained from the confidential informant and he turned in after each post-buy search of the confidential informant. The substances contained in the exhibit bags were tested and identified as cocaine and crack cocaine.
 {¶ 31} There was also testimony that the officers performed a pre-buy search of the confidential informant and his car. The confidential informant was under audio surveillance for the transactions and at times he was even outfitted with video surveillance. Hence, we fail to see how the trial court acted unreasonably or unconscionably in its admission of the cocaine purchased by the confidential informant from appellant.
 {¶ 32} In addition, appellant argues that the trial court erred in the admission of state's exhibit 54, which were some glass tubes, over his objections. Appellant claims that the admission of the glass tubes was irrelevant and should not have been permitted because it was prejudicial to his case as there was no testimony introduced that anyone in the house was ever witnessed using crack cocaine.
 {¶ 33} Yet, the state presented testimony that glass tubes are often found in the vicinity of large quantities of drugs. There was also evidence that a substantial amount of cocaine was recovered from the same location as the glass tubes. Thus, appellant had failed to show that the trial court abused its discretion or that he was prejudiced.
 {¶ 34} Appellant lastly claims that the trial court erred in the admission of state's exhibit 67, which was $2,795 taken from appellant. The testimony at trial revealed that the money was removed from appellant's wallet and pocket by a deputy on January 31, 2003. The deputy testified that he did not count the money, but that a wad of money was removed from appellant's pocket. A second deputy counted the money before turning it over to the evidence officer. Appellant has failed to prove that the trial court abused its discretion in admitting this exhibit. He also did not show that the admission of this evidence prejudiced him. Appellant's second assignment of error is overruled.
 {¶ 35} Under the third assignment of error, appellant alleges that the trial court erred when it overruled his Crim.R. 29 motion for acquittal.
 {¶ 36} The Supreme Court of Ohio established the test for determining whether a motion for acquittal is properly denied inState v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus, which states that "[p]ursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." When an appellant makes a Crim.R. 29 motion, he is challenging the sufficiency of the evidence introduced by the state. As this court stated in State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 WL 738452, at 4-5:
 {¶ 37} "`"(* * *) (T)he test (for sufficiency of the evidence) is whether after viewing the probative evidence and the inference[s] drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. The claimof insufficient evidence invokes an inquiry about due process. Itraises a question of law, the resolution of which does not allowthe court to weigh the evidence. * * *"'
 {¶ 38} "In other words, the standard to be applied on a question concerning sufficiency is: when viewing the evidence `in a light most favorable to the prosecution,' * * * `(a) reviewing court (should) not reverse a jury verdict where there is substantial evidence upon which the jury could reasonably conclude that all of the elements of an offense have been proven beyond a reasonable doubt.' * * *." (Emphasis sic.) (Citations omitted.)
 {¶ 39} An appellate court must look to the evidence presented to determine if the state offered evidence on each statutory element of the offense, so that a rational trier of fact may infer that the offense was committed beyond a reasonable doubt.State v. March (July 16, 1999), 11th Dist. No. 98-L-065, 1999 WL 535675, at 3. The evidence is to be viewed in a light most favorable to the prosecution when conducting this inquiry. Statev. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. Furthermore, the verdict will not be disturbed on appeal unless the reviewing court finds that reasonable minds could not have arrived at the conclusion reached by the trier of fact. State v. Dennis (1997), 79 Ohio St.3d 421, 430.
 {¶ 40} Applying this standard to the matter at hand, the state was required to present sufficient evidence to establish that appellant committed the offenses of possession of cocaine and trafficking in cocaine. The offense of possession is defined by R.C. 2925.11(A), which provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance." Possession "means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). The offense of trafficking is defined by R.C. 2925.03(A)(1), which provides that "[n]o person shall knowingly * * * [s]ell or offer to sell a controlled substance[.]"
 {¶ 41} Upon searching appellant's residence, a large quantity of drugs was found in a first floor bedroom. Since the cocaine was not found on appellant's person, we must determine whether he constructively possessed it. To establish constructive possession, the evidence must prove that appellant was able to exercise dominion and control over the contraband State v.Wolery (1976), 46 Ohio St.2d 316, 332.
 {¶ 42} Here, there was evidence that appellant was present when the drugs were recovered from the bedroom, and he was close to the bedroom that contained them. Appellant had about $2,795 in his pocket at the time of his arrest. The residence address where the drugs were recovered from was the same address as provided at the time of appellant's booking. Further, some of the money contained in appellant's pocket was the buy money provided to him from the confidential informant. There was also testimony from the confidential informant that he had seen appellant, who appeared to have just awakened, exit from the first floor bedroom on one prior occasion. Moreover, the officers were able to monitor through audio and video surveillance the buys between appellant and the confidential informant. Thus, we conclude that this evidence, although circumstantial, was sufficient to show appellant had constructive possession of the cocaine in the bedroom.
 {¶ 43} Therefore, the record in the instant matter contains substantial, credible evidence from which to conclude that the state had proved all elements of the charged crimes beyond a reasonable doubt, including that appellant had trafficked in cocaine and possessed cocaine. After viewing this evidence in a light most favorable to the state, this court concludes that any rational trier of fact could have found the essential elements of possession and trafficking proven beyond a reasonable doubt. The trial court properly denied appellant's motion for judgment of acquittal. Appellant's third assignment of error is not well-founded.
 {¶ 44} In his fourth assignment of error, appellant contends that the trial court erred in imposing consecutive sentences for two first degree felonies which were allied offenses of similar import.
 {¶ 45} When imposing consecutive sentences, the trial court must first determine that consecutive sentences are "necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public[.]" R.C. 2929.14(E)(4). Next, the trial court must find that one of the following factors listed in R.C. 2929.14(E)(4) is also present: (a) that the offender was awaiting trial or sentencing or was under community control sanctions; (b) that the harm caused by the offenses was so great that a single prison term would not adequately reflect the severity of the conduct; or (c) that the offender's prior criminal history demonstrates that consecutive sentences are necessary to protect the public from future crime. State v.Norwood (June 8, 2001), 11th Dist. No. 2000-L-072, 2001 WL 635951, at 4.
 {¶ 46} The court must also follow the requirements set forth in R.C. 2929.19(B) when sentencing an offender to consecutive sentences under R.C. 2929.14. Specifically, R.C. 2929.19(B)(2)(c) requires that the trial court justify its imposition of consecutive sentences by making findings that gives the court's reasons for selecting that particular sentence. The Supreme Court of Ohio held that when ordering a defendant to serve consecutive sentences, the trial court must make its statutorily required findings at the sentencing hearing. State v. Comer,99 Ohio St.3d 463, 2003-Ohio-4165, at paragraph one of the syllabus.
 {¶ 47} In the case sub judice, at the sentencing hearing, it is our view that the trial court did not make the requisite findings under R.C. 2929.14(E)(4). The court found that appellant had a "lengthy history of criminal convictions which are set forth in the probation report; that he has not responded favorably to previous sanctions previously imposed * * *." The court noted that appellant previously served seven prison terms since 1969. Further, the court stated that "because of the number of offenses and the offender's previous history that it would not adequately reflect the seriousness of the conduct or adequately protect the public not to impose consecutive sentences so each one of the 17 counts and the one count of fourth degree trafficking are to be run consecutively to the count of the possession." However, it is our position that the facts of this case do not sufficiently support the foregoing findings pursuant to R.C. 2929.19 and R.C. 2929.14(E). See State v. Gonzalez,154 Ohio App.3d 9, 2003-Ohio-4421, at ¶ 135-136. The trial court did not sufficiently articulate its reasons for the nineteen and one-half year aggregate prison term.
 {¶ 48} Here, the trial court completely failed to review any of the factors announced in R.C. 2929.12(C) mitigating the seriousness of appellant's conduct or in R.C. 2929.12(D) regarding the likelihood of appellant's recidivism. It is our view that the trial court may have considered the seriousness and recidivism factors in a general manner. However, under R.C.2929.12(A), the trial judge is required to consider the applicable seriousness and recidivism factors in subsections (B), (C), (D), and (E). There is no indication in the record that the trial judge did that. Furthermore, the trial court did not mention appellant's age of sixty as being a factor when considering the nineteen and one-half year sentence. Accordingly, this argument has merit.
 {¶ 49} Under this assignment of error, appellant also alleges that the trial court should have merged the two first degree felony charges prior to sentencing. Appellant was charged with trafficking in crack cocaine and possession of crack cocaine. As a result, he contends that he should have only been sentenced to one nine year term and not two. However, the Supreme Court of Ohio has held that, in determining whether offenses are allied pursuant to R.C. 2941.25, a court must compare the elements of the offenses, in the abstract, and decide if the crimes "correspond to such a degree that the commission of one crime will result in the commission of the other." State v. Rance
(1999), 85 Ohio St.3d 632, 638. In State v. Johnson (2000),140 Ohio App.3d 385, 390, the court determined that trafficking in cocaine and possession of cocaine are not allied offenses of similar import (holding that possession and trafficking are not allied offenses of similar import, because the statute proscribing possession does not include the element of a sale or an offer to sell, while the drug-trafficking statute does not require actual possession or use of the controlled substance). We agree. Appellant's fourth assignment of error has no merit.
 {¶ 50} Under his fifth assignment of error, appellant asserts that he received ineffective assistance of counsel when his attorney failed to request a change of venue during voir dire and when his attorney failed to call any of the witnesses who were present during the search of appellant's residence.
 {¶ 51} To warrant a reversal on the grounds that appellant was not provided with effective assistance of counsel, he bears the burden of meeting the two-prong test set forth in Stricklandv. Washington (1984), 466 U.S. 668, 687, which states that: "[a] convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction * * * has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable."
 {¶ 52} To determine whether an attorney's performance was deficient, the trial court must inquire whether the attorney provided "reasonably effective assistance, considering all the circumstances." State v. Loza (1994), 71 Ohio St.3d 61, 83, citing Strickland. "A Sixth Amendment violation does not occur `unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance.' * * *"State v. Goodwin (1999), 84 Ohio St.3d 331, 334, quoting Statev. Bradley (1989), 42 Ohio St.3d 136, 142. Further, a properly licensed attorney is presumed to be competent, and thus, judicial scrutiny of his or her performance must be highly deferential.Strickland, 466 U.S. at 689. An attorney's strategic decisions and trial tactics will not support a claim of ineffective assistance. State v. Clayton (1980), 62 Ohio St.2d 45, 48-49.
 {¶ 53} Under the second prong of the Strickland test, appellant must show that he was prejudiced. To show prejudice, he must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Bradley, 42 Ohio St.3d at paragraph three of the syllabus; State v. Stojetz (1999), 84 Ohio St.3d 452, 457. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." State v. Bays (1999),87 Ohio St.3d 15, 27.
 {¶ 54} In the case at bar, appellant claims that his counsel was ineffective because he failed to request a change of venue during voir dire and he failed to call any of the witnesses who were present during the search of appellant's residence.
 {¶ 55} A "[t]rial counsel's failure to request a change of venue is not tantamount to ineffective assistance of counsel."State v. White (1998), 82 Ohio St.3d 16, 24. When it appears a fair and impartial trial cannot be held, a trial court can change venue. Crim.R. 18(B). However, even where there is extensive pretrial publicity, a change of venue is not automatically granted. White at 24. "Instead, the decision whether to grant a change of venue rests largely within the discretion of the trial court." Id., citing State v. Maurer (1984), 15 Ohio St.3d 239,250.
 {¶ 56} Although appellant contends prejudice must be presumed in this case when it became apparent that a fair number of potential jurors knew the judge, one of the parties to the case, someone connected with the case in some regard, or heard about the case in the news, the Ohio Supreme Court has stated "[i]t is rare for a court to presume that a jury is prejudiced by pretrial publicity." White at 21, citing State v. Lundgren (1995),73 Ohio St.3d 474, 479. "[T]he fact that prospective jurors have been exposed to pretrial publicity does not, in and of itself, demonstrate prejudice. `[P]retrial publicity — even pervasive, adverse publicity — does not inevitably lead to an unfair trial.' * * *" White at 21. Accordingly, if "`the record on voir dire establishes that prospective veniremen have been exposed to pretrial publicity but affirmed they would judge the defendant solely on the law and the evidence presented at trial, it is not error to empanel such veniremen.'" Id., quoting Maurer at 252.
 {¶ 57} The voir dire in this case revealed that five jurors were familiar with the court's bailiff, the attorneys or appellant: (1) Mr. Gordon knew the court's bailiff; (2) Mr. Baldasare had performed some electrical work for one of the prosecutors; (3) Mr. Francis worked with one of appellant's relatives; (4) Ms. McCullough went from kindergarten through third grade with one of the prosecuting attorney's daughters; and (5) Mr. Hairston knew appellant's family and attorneys on both sides of the case. During voir dire, the court excused for cause Mr. Gordon, Mr. Baldasare, and Mr. Francis; and Ms. McCullough and Mr. Hairston were chosen as alternates. It is our view that appellant has failed to prove that his counsel's performance was deficient in any manner. Further, appellant has failed to demonstrate any prejudice from the impaneled jury or present sufficient operative facts to show pretrial publicity prejudiced the jurors.
 {¶ 58} Appellant next alleges that his trial counsel was ineffective for failing to present any witnesses who were present during the search of his residence. Debatable tactical decisions generally do not constitute a deprivation of effective counsel.State v. Phillips (1995), 74 Ohio St.3d 72, 85. Furthermore, the mere failure to call witnesses for a trial is not a substantial violation of defense counsel's essential duty to his client in the absence of any showing that the testimony of any one or more of the witnesses would have assisted his defense. See, generally, State v. Reese (1982), 8 Ohio App.3d 202, 203. A reviewing court should decline from second-guessing an attorney's trial strategy. State v. Carter (1995),72 Ohio St.3d 545, 558. This is especially the case where the purported testimony of a person who was not called to testify is based solely on the conjecture of the appellant.
 {¶ 59} In the present matter, appellant's trial attorney opted not to present the testimony of appellant's witnesses that appeared on his witness list. Appellant's attorney must have been aware of their testimony and decided not to call them. These matters are all decisions left to counsel's discretion as ones within the ambit of trial strategy. We cannot presume that counsel's performance was deficient or that any such deficiency resulted in prejudice to appellant. Appellant has not shown that his counsel's failure to call the witnesses he claims would have assisted his defense would have changed the outcome of the trial. Therefore, absent prejudice, which is not shown, failure to call witnesses does not deprive a defendant of the effective assistance of counsel. Appellant's fifth assignment of error is not well-founded.
 {¶ 60} For his sixth assignment of error, appellant alleges that the trial court erred when it failed to grant a continuance so his counsel could adequately prepare for trial.
 {¶ 61} The grant or denial of a continuance is a matter entrusted to the broad discretion of the trial court. State v.Powell (1990), 49 Ohio St.3d 255, 259. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Id. at 260. "Whether the court has abused its discretion depends upon the circumstances, `particularly * * * the reasons presented to the trial judge at the time the request is denied.'" Id. at 259. A reviewing court must weigh the potential prejudice to a defendant against a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice. Id.
 {¶ 62} In evaluating a motion for a continuance, the factors to be considered by the trial court include: (1) the length of the delay requested; (2) whether other continuances were requested and received; (3) the inconvenience to litigants, witnesses, opposing counsel and the court; (4) whether the requested delay was for legitimate reasons or whether it was dilatory, purposeful, or contrived; (5) whether the defendant contributed to the circumstance which caused the request for a continuance; and, (6) other relevant factors, depending on the unique facts of each case. State v. Unger (1981),67 Ohio St.2d 65, 67-68.
 {¶ 63} The record before us reveals that a pretrial was scheduled for March 28, 2003, and a trial was scheduled for April 1, 2003. On March 4, 2003, appellant's attorney filed a motion to suppress and then moved the court for a continuance on March 12, 2003, because he needed additional time to review the extensive discovery which included audio and videotapes. The docket sheet contained in the record reveals that a hearing took place on March 18, 2003. However, the record on appeal does not contain a transcript from that hearing. The trial court denied the motion for continuance. In the absence of a complete record, we must presume regularity in the trial court's proceedings. State v.Tillman (1997), 119 Ohio App.3d 449, 454; Knapp v. EdwardsLaboratories (1980), 61 Ohio St.2d 197, 199. Therefore, without a transcript from the hearing, we must presume that the record supported the trial court's decision not to grant the motion to continue. Thus, appellant's sixth assignment of error is meritless.
 {¶ 64} For the foregoing reasons, appellant's first, second, third, fifth and sixth assignments of error are not well-taken. Given our conclusion that some of the findings provided by the trial court in the fourth assignment of error are unsupported by the record, we reverse the judgment of the trial court and remand the matter so that the court can determine whether the remaining factors, by themselves, justify consecutive sentences. Appellant's fourth assignment of error, therefore, has merit to the extent indicated. The judgment of the Portage County Court of Common Pleas is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. On remand, the trial court is instructed to provide its reasons on the record for selecting consecutive sentences, if it elects to do so.
Christley, J., O'Neill, J., concur.